JOHN M. WILLIAMS, Appellant, *v.* MARGARET CREAN, Appellee.

APPEAL FROM COOK.

The provision of the statute in reference to pre-emption of canal lands was intended to protect all persons who had expended their money in improving such land, with the design of becoming its purchaser, or who should remain upon the land until it was sold, and should become the purchaser at its appraised value.

THIS was a bill of complaint by Margaret Crean against Williams, in which she alleges that she is entitled to the east half of lot six, in block seven, in the original town of Chicago.

Williams had obtained, under a claim for pre-emption, a certificate of purchase of the whole lot from the canal trustees, and complainant insists, in her bill, that she has an equitable right to one-half of it. Tenders one-half the purchase money, and prays that Williams may be restrained from prosecuting an ejectment suit which he has commenced against her, from receiving a deed of her portion of the lot from the trustees, and for general relief. The material facts shown by the evidence, are stated in the opinion. The court, after hearing, and after the bill had been amended, decreed that the complainant, was entitled to a portion of the lot, and that the defendant should execute and deliver to complainant a deed for her portion of the lot, on payment by her of that proportion of the purchase

money paid to the canal trustees, which her portion of the lot bears to the whole lot ; also, that defendant be perpetually enjoined and restrained from prosecuting his suit of ejectment against complainant.

The defendant now brings the cause to this court by appeal.

FARWELL, SMITH & THOMAS, for Appellant.

GOOKINS, THOMAS & ROBERTS, for Appellee.

WALKER, J.  This bill was filed for a conveyance of a portion of a canal lot entered by plaintiff in error under a pre-emption, as canal lands.  The pre-emption in favor of settlers on these lands, to purchase at their appraised value, by persons making improvements upon the same, is given by the proviso to the thirteenth section of the act of 21st February, 1843, (Scates' Comp. 920), in all cases where such improvements were made prior to the first day of that month.  This act was obviously designed to protect all persons who had expended their money and labor in improving such lots or lands, with the design of becoming a purchaser when brought into market, or even those who had not made such improvement with that design, but who should remain upon the lands until they should be sold or until they should become purchasers at their appraised value.

In this case Sullivan sold the part of the lot in controversy, in the year 1842, to Hansen.  In the fall of 1843, or spring of 1844, Hansen, for the sum of five dollars, sold it to Holderson, and in the spring of 1851 he sold to complainant, who took possession.  The consideration which she paid was forty dollars. She kept the fence in repair for about two years, after that time it was not kept up, and the lot remained unenclosed.  On the fourth of July, 1855, the plaintiff in error, who had become the purchaser of all the improvements on the entire lot at the time the law granting the pre-emption went into operation, and which was situated on another portion of the lot, received from the canal trustees a certificate of purchase for the whole lot, as a purchase under the pre-emption given by the statute.

When Hansen purchased, there was no improvement or right of pre-emption on this portion of the lot, and the evidence, we think, shows that Hansen did not know or claim that he had any pre-emption right to the premises at the time he occupied, or when he sold his improvement.  When he purchased, he could have acquired no such right, as the law had then created none, and Holderson testifies that Hansen sold it to him as he had got it.  Then, as he got no pre-emption right by his purchase, and sold it as he obtained it, if he had afterwards

acquired it, he certainly did not intend to sell, nor did Holderson intend to purchase, any such right. He testifies that he made inquiries, and became satisfied that he did not have that right, and sold for that reason. He also says the house was cheap at forty dollars, and complainant said she would give sixty dollars for the house if it could remain; that he told her the house might remain, as far as he cared, but that he would have no trouble about it.

The evidence shows that plaintiff in error, in a few weeks after his purchase of the trustees, called upon the occupants of the tenement, and notified them that he had purchased, and requested them to remove from the lot. The house was occupied by the Crean family, and the mother of complainant promised to leave, made no objection, and asserted no claim for herself or complainant. In November following, plaintiff in error commenced an ejectment suit for the recovery of the premises in controversy, and soon afterwards the family removed to the opposite side of the street, and remained there for upwards of a year. In May, 1858, complainant offered to pay or secure to plaintiff in error one-half of the purchase money. He declined to receive it, and she filed this bill.

From all of these facts it does not appear that defendant in error ever purchased, claimed, or asserted any right to a preemption, until almost three years after plaintiff in error had become the legal owner of the title. The evidence fails to show that she, while in possession, ever asserted such a right, either to plaintiff in error, or to any other person. And if she had supposed she was the owner of such a right, we may well suppose she would have asserted it after the family was notified to remove, as her mother must have communicated the fact to her. But notwithstanding she must have known of that fact, she remains inactive for over two years and a half after suit was instituted. We cannot reconcile this silence and inaction for this period of time with the supposition that she had any such claim. It also appears that when she purchased, she wanted Holderson to warrant that the sills were sound, and that the house could be removed, and that she was willing to give sixty dollars for it, if it could remain, but purchased at forty dollars. This manifestly shows that she did not suppose she was acquiring anything more than the house and a few feet of fence.

Then, if she purchased no right of pre-emption, and intended to purchase none, asserted none, and only paid for the house, we are at a loss to perceive how the law can give her such a right. By not getting its benefit she has lost nothing. She can have no right to a specific performance of a contract, as she did not purchase, or intend to purchase a pre-emption, nor can she

have the contract reformed, for the reason that she obtained all she purchased, and there was no mistake. The whole case has an appearance that this claim is all an after-thought, or the right would have been sooner claimed and asserted; and that there is no semblance of such a right, has been shown by the evidence; wherefore the decree of the court below must be reversed, and the cause remanded.

*Decree reversed.*